UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY JOE PEARSON,<br><br>    Plaintiff,<br><br>v.<br><br>BAKERSFIELD POLICE DEPARTMENT, et al.,<br><br>    Defendants. | Case No.: 1:18-cv-0372- LJO- JLT<br><br>FINDINGS AND RECOMMENDATIONS DISMISSING CERTAIN CLAIMS AND DEFENDANTS |

Cory Joe Pearson asserts officers with the Bakersfield Police Department used excessive force after he surrendered to an arrest. (Doc. 7)

For the reasons set forth below, the Court finds Plaintiff alleges facts sufficient to support his claims against Officers Thomas, Arvizu, Montgomery, and the "Doe" officers. However, Plaintiff fails to allege cognizable claims against other officers, the City of Bakersfield, or the Bakersfield Police Department in the Third Amended Complaint. Therefore, the Court **RECOMMENDS** the claims against the other officers, the City, and the police department be **DISMISSED** without leave to amend.

### I.    Screening Requirement

When an individual seeks to proceed *in forma pauperis*, the Court is required to review the complaint and shall dismiss a complaint or claim, if it is "frivolous, malicious or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2). A claim is frivolous "when the facts

alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

The Court must review Plaintiff's Third Amended Complaint because it supersedes the previously filed complaint. *See Forsyth v. Humana*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

## II.     Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of the complaint is to inform the defendant of the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (internal quotation marks and citations omitted). Vague and conclusory allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 556 U.S. at 679 (citations omitted). When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; legal conclusions are not entitled to the same assumption of truth. *Id.* The Court may grant leave to amend a

complaint to the extent deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

### III. Section 1983 Claims

An individual may bring an action for the deprivation of civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A plaintiff must allege facts from which it may be inferred (1) he was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered, and show causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). Thus, Section 1983 "requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff." *Chavira v. Ruth*, 2012 WL 1328636 at *2 (E.D. Cal. Apr. 17, 2012). An individual deprives another of a federal right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In other words, "[s]ome culpable action or in action must be attributable to defendants." *Puckett v. Corcoran Prison - CDCR*, 2012 WL 1292573, at *2 (E.D. Cal. Apr. 13, 2012).

### IV. Factual Allegations

Plaintiff asserts he was arrested by officers with the Bakersfield Police Department's Violent Criminal Apprehension Team on April 4, 2017. (Doc. 12 at 8) According to Plaintiff, he exited a motel room to smoke a cigarette, when he "noticed a suspicious SUV with blacked out windows slowly approaching in [his] direction." (*Id.*) Plaintiff alleges that when the doors of the vehicle opened, he saw guns and heard someone say, "Get the fuck on the ground." (*Id.*) He asserts that he "immediately [got] on the ground in a prone out position and yell[ed] that [he was] unarmed." (*Id.*)

3

Plaintiff alleges that once the officers reached him, Officer Thomas kneed him in the face, while Officer Montgomery got on Plaintiff's back and handcuffed his hands behind his back. (Doc. 12 at 8) He asserts that an unknown officer said, "welcome to the [p]arty," after which Officer Arvizu began hitting Plaintiff "with his retractable police baton repeatedly while [Plaintiff] was already handcuffed and held down." (*Id.*) Plaintiff reports that Officer Arvizu "did not stop hitting [him] until [his] left leg broke and the bone was protruding from the skin." (*Id.*) In addition, Plaintiff asserts he suffered "multiple wounds to both ankles." (*Id.*) According to Plaintiff, this all occurred "while [he] was held down by [O]fficer Montgomery." (*Id.*) He alleges that "[t]here were also numerous other officers in the vicinity who did not try to stop the assault although [Plaintiff does] not know their names or badge numbers." (*Id.*)

He reports he "was transported to Kern Medical Center via ambulance and was taken into surgery." (Doc. 12 at 8) Plaintiff alleges he "had a 16 inch rod put in [his] leg bone along with multiple pins." (*Id.*) He asserts that he was "in the hospital for about 10 days," after which he was transported to [the] county jail and put into the infirmary." (*Id.*) Plaintiff alleges he "was unable to walk or put any weight on [his] left leg and needed the use of a wheelchair for several months, then [he] was given a cane to use." (*Id.*) He contends he is "still recovering from the injuries sustained from being hit with the baton," and "will never be able to walk normally." (*Id.* at 10)

According to Plaintiff, his right to be free from the use of excessive force was violated by several Bakersfield Police Officers including Officer Arvizu (badge #1176), Officer Montgomery (badge #1151), Officer Gregory (badge # 1012), CST Martinez, and "Doe" officers. (Doc. 12 at 2-3, 8)

**V.     Discussion and Analysis**

The Supreme Court of the United States determined the Due Process Clause of the Fourteenth Amendment protects individuals who have not yet been convicted of a crime "from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 388 (1989). However, allegations of excessive force during the course of an arrest are analyzed under the Fourth Amendment, which prohibits arrests without probable cause or other justification. *Id.* ("claim[s] that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' … are properly analyzed under the Fourth Amendment's 'objective reasonableness'

standard"); *see also Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) ("the use of force to effect an arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures"). The Supreme Court explained:

> As in other Fourth Amendment contexts … the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham*, 490 U.S. at 396-97 (1989) (internal citations omitted). In applying this standard, the Ninth Circuit instructs courts to consider "the totality of the circumstances and . . . whatever specific factors may be appropriate in a particular case." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

In *Graham*, the Supreme Court set forth factors to be considered in evaluating whether the force used was reasonable, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). In addition, Court may consider "whether officers administered a warning, assuming it was practicable." *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013) (citing *Scott v. Harris*, 550 U.S. 372, 381-82 (2007). Ultimately, the "reasonableness" of the actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

### A. Liability of the officers

Previously, Plaintiff did not identify any individual officers in his complaint. (*See generally* Doc. 1) The Court informed Plaintiff that "[t]o the extent [he] seeks to hold individual officers liable, he must name the officers *and* state what each person did to violate his constitutional rights. To state a claim against the individual officers, Plaintiff must facts supporting a conclusion that each defendant personally participated in the deprivation of his rights." (Doc. 3 at 8, emphasis added) (citing *Iqbal*, 556 U.S. at 678; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010)) Plaintiff has now addressed the actions taken by Officers Thomas, Arvizo, Montgomery, and the unknown "Doe" officers.

### 1.     Officer Brent Thomas (Badge No. 1159)

Plaintiff asserts that once he was in a prone position on the ground, Officer Thomas kneed him in the face. (Doc. 12 at 8) He contends Officer Thomas continued to knee him in the face while Officer Montgomery held him down. (*Id.*) Plaintiff contends he was not resisting, and was unable to defend himself from Officer Thomas, because his arms were being held. (*Id.* at 0) Because Plaintiff alleges that he complied with the direction to get on the ground and it does not appear Plaintiff was actively resisting arrest when Officer Thomas struck him in the face, Plaintiff has alleged facts sufficient to support a claim against Officer Thomas.

### 2.     Officer Montgomery (Badge No. 1151)

Plaintiff alleges that Officer Montgomery got on Plaintiff's back and handcuffed him. (Doc. 12 at 8) He asserts Officer Montgomery remained on Plaintiff's back while Officer Thomas kneed Plaintiff in the face and Officer Arvizu hit him with a baton. (*Id.*) Thus, Officer Montgomery used force to keep Plaintiff on the ground as the other officers hit Plaintiff, while Plaintiff was not resisting. (*See id.* at 8-9) These facts support the conclusion that the force used by Officer Montgomery in holding down Plaintiff was not reasonable. Accordingly, Plaintiff stated a cognizable claim against Officer Montgomery.

### 3.     Officer Arvizo (Badge No. 1176)

According to Plaintiff, Officer Arvizo hit him with a baton "until [his] left leg broke and the bone was protruding from the skin." (Doc. 12 at 8) He asserts the strikes from Officer Arvizo came after Plaintiff complied with the order to get on the ground and he was not resisting. Because it does not appear Plaintiff posed a risk to the safety of the officers and was not attempting to evade the officers, the facts alleged support a conclusion that Officer Arvizo used excessive force in violation of Plaintiff's constitutional rights.

### 4.     "Doe" officers

Generally, "Doe" defendants are disfavored in the Ninth Circuit. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *see also Clark v. Rolling Hills Casino*, 2010 WL 1854103, at *4 (E.D. Cal. May 5, 2010). However, when the identities of defendants are not known, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that

discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie*, 629 F.2d at 642.

Plaintiff asserts that "[t]here were… numerous other officers in the vicinity who did not try to stop the assault although [he did] not know their names or badge numbers." (Doc. 12 at 8) The failure to intervene can support an excessive force claim in instances where bystander officers have an opportunity to intervene, but fail to do so. *See Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) ("police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen"). Importantly, "officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham*, 299 F3d at 1289-90 (citing *Bruner v. Dunaway*, 684 F.2d 422, 426-27 (6th Cir. 1982) [holding that officers who were not present at the time of the alleged assault could not be held liable in a Section 1983 action]; *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) [granting the officers' motion for summary judgment because the officers had no "realistic opportunity" to prevent the attack committed]).

The facts alleged, though bare, when interpreted in favor of Plaintiff, support a conclusion that the "Doe" officers had an opportunity to intervene in the actions of Officers Thomas, Arvizu, and Montgomery. Accordingly, the Court finds Plaintiff should be given the opportunity through discovery to identify the unknown defendants.

### 5. Liability of the remaining officers

Previously, Plaintiff identified CST Martinez and Bakersfield police officers Juarez, Duenas, Allred, Gregory as defendants in his Second Amended Complaint. (Doc. 9 at 2, 7) However, it appears Plaintiff has now abandoned his claim against these individuals. Moreover, Plaintiff failed to identify any actions taken by these officers, and did not link the actions of the individual officers to an alleged deprivation of rights in the Third Amended Complaint. *See Rizzo*, 423 U.S. at 371. Therefore, the Court recommends the claims against CST Martinez and Bakersfield police officers Juarez, Duenas, Allred, and Gregory be **DISMISSED**.

### B. Liability of the Bakersfield Police Department

Previously, Plaintiff identified the Bakersfield Police Department as a defendant in the action.

However, the police department is not a proper defendant to Plaintiff's claim for a violation of Section 1983. Although municipalities, such as cities and counties, are amenable to suit, sub-departments or bureaus of municipalities—like the Bakersfield Police Department—are "not generally considered 'persons' within the meaning of Section 1983." *United States v. Kama*, 394 F.3d 1236, 1240 (9th Cir. 2005); *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995) ("Although municipalities, such as cities and counties, are amenable to suit … sub-departments or bureaus of municipalities, such as the police departments, are not generally considered 'persons' within the meaning of § 1983"); *see also Gonzales v. City of Clovis*, 2013 WL 394522 (E.D. Cal. Jan. 30, 2013) (holding that the Clovis Police Department is not a "person" for purposes of Section 1983); *Wade v. Fresno Police Dep't*, 2010 WL 2353525 at *4 (E.D. Cal. June 9, 2010) (finding the Fresno Police Department to not be a "person" under Section 1983). Thus, the Court **RECOMMENDS** the Bakersfield Police Department be **DISMISSED** as a defendant in this action.

### C. Liability of the City of Bakersfield

Significantly, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York City Dep't. of Soc. Services*, 436 U.S. 658, 691 (1978). Thus, a local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *Id.*, 436 U.S. at 691 ("a municipality cannot be held liable solely because it employs a tortfeasor"). Rather, a local government entity may only be liable if it inflicts the injury of which a plaintiff complains through a governmental policy or custom. *Id.* at 694; *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002).

To establish liability, Plaintiff must show: (1) he was deprived of a constitutional right; (2) the City of Bakersfield had a policy; (3) that this policy amounted to deliberate indifference to his constitutional right; and (4) the policy "was the moving force behind the constitutional violation." *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Monell*, 436 U.S. at 690-92. A policy or custom of a government may be established when:

(1) A longstanding practice or custom...constitutes the standard operating procedure of the local government entity;

      (2) The decision-making official was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or

      (3) An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Pellum*, 2011 U.S. Dist. LEXIS 10698, at *8 (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)). Further, a governmental policy may be inferred where there is evidence of repeated constitutional violations for which the officers were not reprimanded. *Menotti*, 409 F.3d at 1147.

      A policy amounts to deliberate indifference when "the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (quotations omitted) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477-78 (9th Cir. 1992); *accord. Canton*, 489 U.S. at 390. To establish deliberate indifference by a government, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson*, 290 F.3d at 1186 (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994). Plaintiff has not identified any custom or policy of the City which caused the deprivations at issue here or alleged the City had actual or constructive notice of any potential harm instituted by its polices.

      Thus, for municipal liability to be imposed, the complaint must allege sufficient facts to demonstrate that an unconstitutional custom caused Plaintiff harm. A custom is "a widespread practice that . . . is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation mark omitted). Consequently, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). On the other hand, Plaintiff may establish municipal liability based upon a single event if he demonstrates that the person causing the constitutional injury was a final policymaker for the entity. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability").

Plaintiff did not make any allegations supporting a conclusion that the City of Bakersfield had a custom of violating civil rights. Moreover, Plaintiff has not plead allegations that any named defendant or any of the unnamed actors had final policymaking authority. Thus, Plaintiff fails to state a claim against the City of Bakersfield. Accordingly, the Court **RECOMMENDS** the claim arising under Section 1983 against the City of Bakersfield be **DISMISSED**, and that the City of Bakersfield be **DISMISSED** as a defendant in this action.

## **VI.** **Findings and Recommendations**

Based upon the foregoing, the Court **RECOMMENDS**:

1. Plaintiff's claim under Section 1983 against the City of Bakersfield; the Bakersfield Police Department; Officers Martinez, Juarez, Duenas, Allred, and Gregory be **DISMISSED** without leave to amend;

2. Bakersfield police officers Martinez, Juarez, Duenas, Allred, and Gregory be **DISMISSED** as defendants in the action;

3. The City of Bakersfield and the Bakersfield Police Department be **DISMISSED** as defendants in this action; and

4. The action proceed only on Plaintiff's claim for excessive force against Officers Thomas, Arvizu, Montgomery, and the "Doe" officers.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these Findings and Recommendations, Plaintiff may file written objections. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **August 2, 2018**     **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE